The judgment is affirmed.

---

No. 25,551.

Ed Pool, *Appellant,* v. R. C. Gates et al, *Appellees.*

SYLLABUS BY THE COURT.

1. Promissory Notes—*Valid Notes Exchanged for New Notes and Mortgages —New Notes Given for Valid Consideration.* Where, at the inducement of the maker of promissory notes which were valid in the hands of the *bona fide* endorsee and holder thereof, the latter accepts new notes with real-estate mortgage security therefor in lieu of the older notes, the new notes and mortgage are valid obligations and have sufficient consideration for their support by the mere fact of their being substituted for the prior indebtedness.

2. Same—*Fraud—Findings—No Constructive Fraud.* No theory of constructive fraud can be considered to disturb a judgment on appeal, when the trial court, upon the evidence adduced, found that that defendant was not involved in any fraud complained of by appellant.

3. Same—*Comment by Trial Court—Low Mentality of Plaintiff—Not a Judicial Finding of Fact.* Certain comment of the trial court touching the low mentality of the plaintiff considered, and held that such comment was not a judicial finding of fact, nor based upon record evidence, and that no issue thereon had been presented for trial and adjudication.

4. Same—*Cross Appellants Purchase of Notes—Judgment on Equitable Principles.* The circumstances attending the cross appellant's purchase of an outstanding $15,000 mortgage, and the limitation of his recovery thereon to its actual cost to him considered on broad principles of equity, and no error discerned therein of which either appellant or cross appellant can complain.

5. Same—*No Reversible Error.* Other minor matters urged to justify a reversal considered, and not sustained.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed May 10, 1924. Affirmed.

*Dennis Madden,* and *C. B. Randall,* both of Topeka, for the appellant.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal presents the result of two cases, consolidated below, in which the plaintiff unsuccessfully sought relief from certain obligations he had incurred in giving notes and mortgages for certain oil stock, trust company stock, and investment stock, and for related purposes which will require to be stated with some detail.

The plaintiff, Ed Pool, is 69 years of age, a farmer, and has been a resident of Stafford county for 45 years. He has acquired title to some 1,470 acres of land valued at $112,000, encumbered to the extent of some $49,500, exclusive of certain mortgages involved in this litigation. As a farmer plaintiff had been successful, and had long kept a bank account, and was quite familiar with the responsibilities involved in giving real-estate mortgages, having given 65 of these obligations in the course of his business career. Some two or three years ago, however, he made certain improvident investments in corporate stocks with which he had no familiarity and which have led him into serious financial consequences.

In 1921 plaintiff bought some Collins Investment Company stock from one DeMasters, giving the latter two notes for $2,500 each in payment therefor, and depositing the stock with DeMasters to secure payment of the notes. DeMasters sold these notes to R. C. Gates, a neighbor of plaintiff.

Early in 1922 plaintiff bought some Derby Oil Stock from one Bushnell, giving the latter two notes for $5,000 each in payment therefor. Shortly afterwards plaintiff bought some more of this stock from Bushnell, giving him a third note for $5,000 in payment. Bushnell sold one of these notes to Frank Sutton and R. C. Gates, and afterwards Gates acquired Sutton's interest in it. Still later Gates purchased a second of these $5,000 notes from Bushnell. It appears that before purchasing some of these notes Gates had talked with plaintiff concerning them, and plaintiff encouraged Gates to buy them. Gates testified:

"Q. Tell us the conversation you had with Mr. Pool at that time just as it occurred. A. I said to Mr. Pool, I said 'You have given this fellow another

$5,000.00 note.' 'Yes, sir,' he said, 'he sold me,'—he said 'I bought $5,000.00 worth of more stock.' I said 'You are giving these notes,' and I said 'you know you can't pay them when they are due.' I said 'what will you do in regard to this?' Mr. Pool says 'If you will take up this note I will give you a mortgage for the notes you hold, [totalling $15,000], a new note and mortgage, and you can give me more time, if you will give me more time.' I told him 'All right,' I would do that."

It was apparently arranged that plaintiff should go to St. John to execute a mortgage on his land pursuant to this arrangement; but instead of doing so, plaintiff bought some Ranchman's Trust Company stock from one Beals, giving notes to the extent of $15,000 in payment, which notes were secured by a mortgage on plaintiff's land. This mortgage was recorded. When Gates heard of this, he reproached plaintiff for his duplicity, but accepted another mortgage from plaintiff pursuant to their prior arrangement modified necessarily by the superior mortgage which plaintiff had given to Beals. To strengthen the attenuated third mortgage security for his $15,000 investment, Gates purchased the Beals note and mortgage of $15,000 for $6,000 in cash.

In 1922 plaintiff brought an action, charging Gates, Bushnell, and others with conspiracy whereby he was defrauded into giving certain of these notes and mortgages, and praying for their cancellation. He also brought a second action against Gates, Beals and others, charging them with similar acts of conspiracy for similar fraudulent purposes, and praying for the same sort of relief. This action pertained chiefly to the transaction relating to the purchase of the Ranchman's Trust Company stock. These two actions were begun in Stafford county.

Yet another action of the same general character was begun in the district court of Sedgwick county, charging the defendants with divers and sundry acts of fraud and conspiracy, and which apparently related to the same transactions, and prayed for the same relief.

After all these actions were begun, plaintiff sold the Ranchman's Trust Company stock for $2,500. The Sedgwick county case was dismissed, and the Stafford county cases were transferred to Reno county and consolidated for trial. Meantime Gates' second and third mortgages matured through plaintiff's default, and Gates filed a cross-petition to foreclose them.

The trial court made findings of fact too voluminous for reproduction here, the principal features of which, so far as concerns this

appeal, were against the plaintiff, and that there was no conspiracy in which R. C. Gates was a participant, and that he had been a *bona fide* holder for value of $15,000 worth of plaintiff's notes, that such notes had been refunded into the notes sued on in this cross action by Gates, and that Gates was entitled to judgment thereon, and that the third mortgage given to secure that indebtedness should be foreclosed and the property sold to satisfy it; also that Gates was entitled to judgment for the $6,000 he paid to buy in the Beals mortgage of $15,000, and to have foreclosure decreed thereon to satisfy that sum, $6,000. It was also decreed by the judgments that plaintiff should take nothing against Gates in either action; but judgments were awarded to plaintiff against Beals for $3,500, against Bushnell for $10,875, and against one Dunne for $3,225, which last, however, was set aside and a new trial ordered thereon.

Plaintiff's principal grievance on appeal pertains to the judgment and decree of foreclosure awarded against him in favor of Gates. A cross appeal is filed in behalf of Gates because he was only given judgment in foreclosure for $6,000 on the $15,000 mortgage which he purchased from Beals.

Noting first the points urged for appellant, it is argued that there was no consideration for the new notes and mortgage given to Gates. There was all the consideration that usually exists when an indebtedness is refunded—new instruments in lieu of older obligations valid in the *bona fide* holder's hands, with such changes in due date, rate of interest and the like as the convenience or necessities of the debtor may require and the circumstances of the creditor permit. The substitution of the new obligation for the old one was sufficient consideration, and the fact of substitution was *prima facie* proof of consideration. (8 C. J. 217 *et seq.*)

It is useless to argue that there was any constructive fraud in the refunding of the $15,000 worth of notes held by Gates. The trial court found that there was no fraud of any sort so far as Gates was concerned. There was, indeed, persuasive evidence of plaintiff's duplicity towards Gates—in promising to give him a second mortgage if Gates would buy in another of plaintiff's outstanding $5,000 notes and extend the time of payment, and then giving a second mortgage to another party in breach of such agreement—but that is the only fraud, constructive or otherwise, discernible in this record so far as the relations of Pool and Gates are concerned.

It is also contended that some sort of fiduciary relationship existed between Gates and plaintiff, but there was no evidence to support that idea, and indeed, it appears to be advanced for the first time in this court—by the *fourth* successive firm of attorneys representing plaintiff in his litigation.

Counsel for plaintiff criticise the trial court's reasons given for some of its rulings. There is no merit in this criticism; and, furthermore, it is immaterial what course of reasoning is the basis of a court's ruling or decision so long as the ruling or decision itself is correct. (*The State v. Frey*, 111 Kan. 798, 802, 208 Pac. 574.)

This same proposition of law will also dispose of the point attempted to be made from the trial court's preliminary remarks preceding its formal findings of fact and conclusions of law, where the court, in part, said:

"The court has carefully read the plaintiff's brief and the reply brief, and while there is no question that the plaintiff is not a keen business man of the world—in fact, on general subjects outside of his farming ability he has hardly the mentality of a child—yet he is a long ways from being *non compos mentis* on any proposition, and the law of negotiable instruments, as I understand it, does not differentiate in the order of the maker's intelligence."

This remark was not a finding of fact; there was no evidence in the record pertaining thereto, and no such issue of fact was raised by the pleadings or otherwise in either case.

Touching the judgment for $6,000 on the $15,000 mortgage which Gates had acquired from Beals, it will make for brevity to consider jointly the complaints of both plaintiff and defendant therewith. Defendant contends that since he acquired that $15,000 mortgage indebtedness free of fault he should have been given judgment for the full amount of its face value. It was not because Gates acquired that indebtedness without notice of some defenses to it that he obtained judgment thereon for $6,000, or for any sum at all. It was because, notwithstanding he had notice of defenses, the plaintiff had wronged him by giving Beals that mortgage for $15,000 ahead of his promised mortgage to Gates, and because Gates had to pay $6,000 to get hold of that indebtedness, and because the trial court believed that he was justified in expending that sum to protect his other *bona fide* investments and to minimize the adverse effect to him of an outstanding $15,000 mortgage superior to his promised security. Such apparently was the view of the trial court when it permitted Gates to recover judgment for the $6,000, which he in-

vested to protect his security for the Pool notes he had already acquired. And but for that apparent justification for plaintiff's purchase of the Beals mortgage, defendant would have had to meet the same defenses as the original payee, which would probably have limited his recovery to the actual worth of the trust company stock at the time Pool bought it from Beals ($50 to $100 per share instead of $300 per share, the basis on which it was sold to Pool.—Findings 2 and 3 in *Pool v. Beals, et al.*) It thus appears that Gates has no just complaint at the judgment, and by the same reasoning plaintiff has no just complaint thereat. It was through his fault that Gates was compelled to spend $6,000 to get control of the Beals mortgage when there was every possibility and probability that it would otherwise have passed into the hands of some ostensibly innocent holder and the plaintiff would have been irrevocably liable thereon for the whole sum.

A curious theory is advanced for plaintiff suggesting some fancied fiduciary relationship of Gates to Pool concerning the Ranchman's Trust Company stock, but the evidence contains nothing on which such theory could be founded. Plaintiff also suggests his own possible liability to Gates for $2,500, being the amount he realized on the sale of the trust company stock, or that he should have been permitted to go on the market and buy as much of such stock as he had sold for $2,500, and that he, the plaintiff, should be permitted to deposit such stock to the use and benefit of Gates. Presumably this theory is advanced in logical sequence to plaintiff's contention that Gates had been concerned with the sale of that stock to plaintiff in the first instance, and that some sort of restitution would be due to Gates before his notes to the latter could be canceled or defeated. As the trial court's findings resolved all the principal features of the litigation in Gates' favor, he is not in any wise concerned with the Ranchman's Trust Company stock or with any of plaintiff's possible obligations to other parties concerning his disposition of it.

It is finally suggested that this court should order the cancellation of plaintiff's note held by G. M. Dunne. That is a matter not subject to consideration in this appeal. There is no appeal from the order granting a new trial on the Pool-Dunne feature of this litigation.

A painstaking review of the matters involved herein discloses nothing approaching reversible error. It follows that our order

Dolman and Clark v. Kingman County.

heretofore made staying the execution of the judgment of the district court of Reno county and all proceedings in that court should be vacated and the judgment of that court should be affirmed.

It is so ordered.