No. 39,142

In the Matter of the Estate of C. A. Good, Deceased. Mamie Bryson, *Petitioner* and *Appellee*, v. Bessie R. Good, Executrix of the Estate of C. A. Good, Deceased, *Respondent* and *Appellant*.

(266 P. 2d 719)

Opinion filed January 23, 1954.

*L. E. Quinlan,* of Lyons, argued the cause and was on the brief for Appellee.

*John F. Eberhardt,* of Wichita, argued the cause and *Arthur C. Hodgson,* of Lyons, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge,* and *Robert M. Siefkin,* all of Wichita, were with him on the brief and abstract for Appellant.

The opinion of the court was delivered by

Harvey, C. J.: This was an action, initiated by the filing of a petition in the probate court of Rice county in the Estate of C. A. Good, deceased, in which plaintiff sought specific performance of an alleged oral contract made with the decedent in August, 1946, by which C. A.

Good proposed to her that he would will and devise to her a certain quarter section of land if she and her family would come and live with him and care and provide for him as they had done from November, 1945, to June, 1946, which proposal she accepted and she and her family performed the agreement until C. A. Good died June 27, 1952, and which land he failed to devise to her in his will. In order that it may be accurately stated the petition is attached hereto as Appendix A. After the petition was filed, the matter was duly transferred to the district court for trial in harmony with G. S. 1949, 59-2402a, *et seq.* In due time Bessie R. Good, the sole beneficiary of the will of C. A. Good and Executrix of his estate, filed an answer, which also is attached hereto as Appendix B. A trial by the court resulted in judgment for plaintiff, and the respondent has appealed.

The general facts may be stated briefly as follows: C. A. Good was born in Iowa on December 12, 1869, and spent most of his life in Rice county, Kansas. About 1895 he married Bertha Wills, and they lived together as husband and wife for more than fifty years until her death in June, 1945. For a few months thereafter Mr. Good lived in Lyons where he had a housekeeper. The plaintiff Mamie Bryson and her husband Eugene had lived in Lyons since 1939. In 1940 they built and moved into a home which appears to have had a main floor under which is what is spoken of as a basement apartment. In October, 1945, Mr. Good bought this home for $7,000. The Brysons had two children, a son and a daughter, who were in school and made some arrangements with Mr. Good whereby they could live in the house for the remainder of the school year. They lived in the basement apartment and the living room furniture and perhaps other things were left in the main part of the house which was occupied by Mr. Good. He had his meals with them and Mrs. Bryson looked after him generally. When the school year ended the Brysons moved to Okmulgee, Okla. In August, 1946, the oral agreement in question was made and the Brysons moved back into the home they had sold to Mr. Good. At that time, however, Mr. Good lived in the basement apartment and the Brysons used the other part of the house for their living quarters until Mr. Good's marriage to Bessie R. Wills on March 31, 1951, when the Brysons again moved to the basement apartment and Mr. Good and his wife occupied the other part of the house. On January 15, 1951, Mr. Good sold the property to the Brysons. Mr. Good

was a man of substantial means and for about two years prior to his death he bought quite a number of shares of stock of United Funds, Inc., an investment company. Quite a few of the investments were made with the proceeds from the sale of real property. Some of the shares were purchased in the name of Mr. Good and the plaintiff as joint owners and so worded that Mr. Good received the income from them as long as he lived and after his death they became the property of the plaintiff.

Following the trial by the court without a jury the court rendered and signed a written decision which was filed with the clerk of the court and which reads:

"The above entitled cause of action was tried to the court commencing on May 27, 1952, at the conclusion of which trial, the court took the matter under advisement.

"NOW, on this 28th day of October, 1952, the court, being fully advised in the premises, finds generally for the petitioner, Mamie Bryson, and against the Estate of C. A. Good, Deceased, and renders judgment in accordance with the prayer of said petition, costs in said action to be taxed against the Estate of C. A. Good, deceased.

"IT IS SO ORDERED."

On the same day, October 28, 1952, counsel for respondent moved the court to make findings of fact and conclusions of law reciting that he had understood that would be done and relying thereon had not made a special request therefor. Whereupon, the court made and filed with the clerk of the court the following:

"FINDINGS OF FACT. The above entitled cause of action came on to be heard before the court on the 27th day of May, 1952, said cause being transferred from the probate court of Rice County, Kansas to the District Court of Rice county, Kansas. The court makes findings of fact as follows:

"1. That C. A. Good, and the petitioner, Mamie Bryson, and her family, during the latter part of 1945, and in the spring of 1946, resided together in a residence in Lyons, Kansas, and that the decedent, C. A. Good, took his meals with petitioner and her family, and otherwise occupied the home, and that during said time the petitioner looked after said C. A. Good by furnishing him his meals, by doing his washing and ironing and mending, and also, with her husband would drive Mr. Good, in his car or in her car, around to look after Mr. Good's farm land and other business, to church, and to the doctor.

"2. That in June, 1946, the petitioner and her family moved from Lyons, Kansas, to Okmulgee, Oklahoma, with the intention of making it their permanent home.

"3. That in the month of August, 1946, petitioner came to Lyons, Kansas, for a visit with Mr. Good, and that the said C. A. Good made an oral offer and proposition to petitioner that if she and her family would move back to the home at 420 South Bell Street in Lyons, Kansas, and take care of him, and

look after him as they did when he lived with them from November, 1945 to June, 1946, as long as he lived, that he would devise and will to her certain land in Rice County, Kansas, which was identified in the testimony as the Southeast Quarter of Section 34, Township 19, Range 7, West of the 6th P. M., in Rice County, Kansas. That after petitioner had a conversation with her husband concerning said offer, and on August 9, 1946 she informed the decedent, C. A. Good, that she would accept the offer made to her by said C. A. Good that he would will and devise to her said above described land, and that they would move back to Lyons, Kansas, as soon as possible to begin the performance of her part of the contract, and that in compliance with said terms of the contract, petitioner and her family did move back to Lyons, Kansas, from Okmulgee, Oklahoma, on or about the 23rd day of September, 1946, and that petitioner looked after Mr. C. A. Good until his remarriage on the 31st day of March, 1951, and that after the marriage of Mr. C. A. Good to Mrs. Bessie Wills, that Mr. and Mrs. Good occupied the upper part of the house at 420 South Bell Street, and petitioner and her family occupied the basement part of said house, and that petitioner fully and completely performed all of her part of the oral contract and agreement made between she and Mr. Good on the 9th day of August, 1946 until the date of the death of Mr. C. A. Good.

"4. That said C. A. Good died on the 27th day of June, 1951, and that previous to his death, on the 17th day of April, 1951, made and executed a last will and testament, by the terms of which he devised and bequeathed all of his estate to his wife, Bessie Wills Good. That by the terms of said will, C. A. Good failed to will and devise to the petitioner the above described quarter-section of land, and failed to fulfill his part of the contract and agreement between he and the petitioner.

"5. That the said Bessie Wills Good, as executrix of the estate of C. A. Good, deceased, is now, and has been in possession of said land, and has collected the rents and profits therefrom.

"6. That the petitioner is entitled to an accounting of all rents and profits from said quarter-section of land since the death of C. A. Good."

.    .    .    .    .    .    .    .    .    .    .    .    .

"CONCLUSIONS OF LAW. 1. The court concludes as a matter of law, that said petitioner and C. A. Good entered into an oral contract by the terms of which said C. A. Good would will and devise said land to petitioner, if petitioner would take care of him until his death, and that petitioner fully and completely fulfilled her part of said contract, and that the court renders judgment for petitioner, decreeing specific performance of the contract between petitioner and C. A. Good, and that petitioner is adjudged to be the owner and entitled to the immediate possession of the Southeast Quarter of Section 34, Township 19, Range 7, West of the 6th P. M., in Rice County, Kansas; and that the same is adjudged to be no part of the estate of C. A. Good, deceased, and that Bessie R. Good be adjudged to have no right, title, equity or interest therein.

"2. That said Bessie R. Good, Executrix of the estate of C. A. Good, be required to account to this court for all rents and profits received from said land since the 27th day of June, 1951, and that she be ordered to pay to petitioner all such rents and profits so received.

"3. Costs in the case are taxed to the Estate of C. A. Good, deceased.

"DATED, at Lyons, Kansas, this 28th day of October, 1952."

On October 31, 1952, respondent filed a motion for a new trial upon the grounds (1) abuse of discretion by the court; (2) erroneous rulings of the court; (3) the decision of the court is in whole or in part contrary to the evidence; (4) newly discovered evidence material for the defense against the claim, which the Executrix could not, with reasonable diligence have discovered and produced at the trial; and, (5) that the decision was procured by the corruption of the party obtaining it.

Respondent also filed a motion for additional findings of fact as follows:

"1. That between January 28, 1950, and June 20, 1950, the decedent, C. A. Good purchased 1754 shares of United Funds, Inc., at a cost of $22,556.44. That the same were purchased in joint ownership with C. A. Good and Mamie Bryson, as joint owners. That the decedent received the income from the trust shares during his lifetime and that the principal of the trust shares immediately passed to Mamie Bryson upon the death of C. A. Good.

"2. That in the last two years of the decedent's lifetime, the decedent entered into a program involving the sale of all farms owned by the decedent, and that said decedent was using the income from said sale to purchase trust shares in United Funds, Inc., that the decedent purchased 1754 trust shares payable to Mamie Bryson, and that said purchase was to constitute payment of any liability which may have been formerly created between the decedent, C. A. Good and Mamie Bryson by virtue of any oral contract to leave property to said Mamie Bryson as alleged in plaintiff's petition.

"3. That it was not the intention of the decedent and of the claimant, Mamie Bryson, that any services rendered by Mamie Bryson under the oral contract should be paid for twice, and that the purchase of the trust shares in the name of Mamie Bryson was in lieu of, and in payment of, any obligation on the decedent's part to leave any other property to the said Mamie Bryson.

"4. That the purchase of said trust shares and ultimate delivery thereof to the plaintiff, Mamie Bryson, constituted full, adequate and fair compensation for any services rendered by the said plaintiff, Mamie Bryson.

"5. That the value of said trust shares at the time they were purchased was approximately the value of the farm which the claimant, Mamie Bryson, alleges the decedent, C. A. Good, agreed to leave to her."

and for additional conclusions of law as follows:

"1. That any oral contract between the decedent, C. A. Good, and Mamie Bryson, was paid in full by the delivery of 1754 trust shares in United Funds, Inc., which have been delivered to Mamie Bryson and accepted by her, and accordingly the claimant, Mamie Bryson, is denied recovery as requested in her Petition."

On December 1, 1952, the plaintiff filed a motion for additional findings of fact in sixteen paragraphs, which we need not copy.

These motions came on for hearing before the court on December 5, 1952. At that time the motions were presented and informally discussed by counsel with the court and were held for further consideration.

On December 16, 1952, respondent filed a motion for additional findings of fact as follows:

"1. That any services performed by the claimant, Mamie Bryson, for the decedent, C. A. Good, between the dates of August 9, 1946 and the date of death of the decedent, C. A. Good, could be compensated for in money.

"2. That the claimant, Mamie Bryson, had been adequately compensated for the services rendered to C. A. Good between the dates of August 9, 1946 and the date of decedent's death on the 27th day of June, 1951 and that if claimant, Mamie Bryson is allowed to keep 1754 shares of United Funds, Inc. and that quarter section of land described as the Southeast Quarter (SE¼) of Section Thirty-four (34), Township Nineteen (19) South, Range Seven (7) West in Rice County, Kansas, said claimant, Mamie Bryson, will in effect be receiving pay twice for her services.

"3. That the claimant, Mamie Bryson, shall return to the estate the 1754 shares of United Funds, Inc. which she received from said estate or the value of said shares in money as of the time of the death of C. A. Good as of June 27, 1951."

On February 2, 1953, when the motions were further discussed by respective counsel and court at the conclusion of which the court announced that its final decision would be withheld until the court reporter had time to make up the record so that the rights of the various parties, in case of an appeal, may be protected. The court's decision being withheld on all matters brought before the court on that day until such time as a final decision could be made, not only on the main part of the case but on the motions for additional findings of fact and conclusions of law and the motion for a new trial.

On February 14, 1953, the court reduced to writing and filed the proposed finding and decision announced at the conclusion of the January 2, 1953, hearing, as follows:

"Decision of the Court on Motion for New Trial and Motions for Additional Findings of Fact and Conclusions of Law. The above entitled cause of action was presented to the court on December 5, 1952, and on February 2, 1953, on the motion for new trial filed by the Executrix of the Estate of C. A. Good, Deceased, and on motions for additional findings of fact, and for additional conclusions of law, filed by the petitioner and by the executrix.

"The court, having examined the pleadings, and being fully advised in the premises, finds as follows:

"1. The court finds that the motion for a new trial filed by the Executrix under date of October 31, 1952, should be, and the same is hereby overruled by the court.

"2. The court finds as follows concerning the motion for additional findings of fact filed by petitioner under date of December 1, 1952:

"Paragraphs 1 and 2 of said motion are hereby overruled.

"As to Paragraph 3 of said motion, the court makes the following finding:

"3. From around the first part of November, 1945 until school was out in the spring of 1946, the petitioner and her family lived in a residence property in Lyons, Kansas, that they had sold to Mr. Good, and that Mr. Good occupied this residence with them. That during such time Mr. Good took his meals with the family and occupied the home, and the evidence shows that the petitioner performed the ordinary household services for Mr. Good, and that they also would take Mr. Good to look after his farms and other business, and to church, and to his burial plot, and the court reached the conclusion that Mr. Good had probably paid petitioner for these services.

"As to Paragraph 4 of said motion, the court makes the following finding:

"4. That evidence was introduced that about the 15th day of June, 1946, petitioner and her family moved from Lyons, Kansas, to Okmulgee, Oklahoma; that there was also evidence that they moved to Oklahoma with the intention of making it their permanent home. However, the evidence in the case discloses that the husband of petitioner was engaged in oilfield work, and that in such oilfield work, he was liable to be called to any place at any time.

"As to Paragraph 5 of said motion, the court makes the following finding:

"5. That along in the month of August, 1946, the petitioner came to Lyons, Kansas, to visit Mr. Good, and that at said time, Mr. Good made her the proposition that if she and her family would move to Lyons, Kansas and take care of him, and look after him as they did when he lived with them before, as long as he lived, he would devise and will to her the Southeast Quarter of Section 34, Township 19 South, Range 7 West, of the 6th P. M., Rice County, Kansas, and that after talking the matter over with her husband, she and her husband and family moved back to Lyons, Kansas.

"As to Paragraph 6 of said motion, the court makes the following finding:

"6. About September 25th, 1946, petitioner and her family moved from Okmulgee, Oklahoma to the home of Mr. Good in Lyons, Kansas, and began the performance of her part of the contract.

"As to Paragraph 7 of said motion, the court makes the following finding:

"7. During the time Mr. Good and petitioner and her family lived together preceding Mr. Good's marriage, that petitioner looked after, and helped take care of Mr. Good by preparing his meals, looking after the washing, ironing, and mending of his clothing, and also nursed him when he was ill, and assisted him in looking after his various business transactions.

"Paragraph 8 of said motion is hereby denied.

"Paragraph 9 of said motion is hereby denied.

"As to Paragraph 10 of said motion, the court makes the following finding:

"10. On numerous occasions Mr. Good stated to his preacher, his doctor, and his relatives and friends that petitioner was giving him more care, attention and affection than any other person he had ever known, including his own relatives.

"As to Paragraph 11 of said motion, the court makes the following finding:

"11. The nature of the contract between C. A. Good and petitioner was such that it required petitioner's companionship and affection as well as carry-

ing on the other duties required of her in such manner that the same could not be and; was not intended to be compensated for in money, but was to be compensated for by willing or deeding to her the quarter-section of land in controversy.

"As to Paragraph 12 of said motion, the court makes the following finding:

"12. The said C. A. Good died on the 27th day of June, 1951, and previous to his death, on the 17th day of April, 1951, he made and executed a last will and testament by the terms of which he devised and bequeathed all of his estate to his wife, Bessie Wills Good; that by the terms of said will, C. A. Good failed to will and devise to petitioner the above described quarter-section of land and failed to fulfill his part of the contract and agreement between he and the petitioner.

"Paragraph 13 of said motion is hereby denied.

"As to Paragraph 14 of said motion, the court makes the following finding:

"14. Petitioner fully and completely performed all her part of the oral contract and agreement made between she and C. A. Good about the 9th day of August, 1946.

"As to Paragraph 15 of said motion, the court makes the following finding:

"15. Between January 28, 1950, and June 20, 1950, decedent C. A. Good purchased 1754 shares of United Funds, Inc., at a cost of approximately $22,556.44. That the same were purchased in joint ownership with C. A. Good and Mamie Bryson, as joint owners. That the decedent received the income from the trust shares during his lifetime and the principal of the trust shares immediately passed to Mamie Bryson upon the death of C. A. Good.

"As to Paragraph 16 of said motion, the court makes the following finding:

"16. Bessie Wills Good, as executor of the estate of C. A. Good, deceased, is now and has been in possession of said land, and has collected the rents and profits therefrom since the death of the said C. A. Good. Petitioner is entitled to an accounting of all rents and profits from said quarter-section of land since the death of the said C. A. Good.

"That the court makes the following additional finding of fact:

"17. That at the time the contract was entered into between petitioner and C. A. Good, the estate of Mr. Good was worth approximately $250,000.00. That at the time of the death of C. A. Good, the value of the estate owned by C. A. Good was approximately $250,000.00, taking into consideration the values of the shares of stock of United Funds, Inc., which he had purchased from the proceeds of the sale of real estate, and which shares of stock were held by him in joint ownership with the following persons, as follows:

| Name of Joint Owner with C. A. Good | No. of Shares | Approximate value as of June, 1950. |
|---|---|---|
| Mrs. Ruth H. Copeland | 1858 | $23,893.88 |
| Mrs. Lottie Horning | 1858 | 23,893.88 |
| Helen Allison | 929 | 11,946.94 |
| Mrs. Avis Leatherock | 929 | 11,946.94 |
| Mamie Bryson . | 1754 | 22,556.44 |
| Bessie Wills Good | 5646 | 72,607.56 |

Total $166,845.64

"That the appraised value of the estate of C. A. Good, after taking the above shares of United Funds, Inc., into consideration, and not including said shares, amounted to $91,225.86.

"3. The court finds as follows concerning the motion for additional conclusions of law filed by petitioner herein under date of December 1, 1952:

"Paragraph 1 of said motion is hereby overruled.

"As to Paragraph 2 of said motion, the court makes the additional conclusion of law as follows:

"2. The services performed by petitioner for the said C. A. Good in companionship, affection and obedience to his wishes as well as carrying on the other duties required of her under the terms of said contract were of such nature that the petitioner should be compensated therefor by the deeding, or willing, of the land involved in this controversy to her.

"Paragraphs 3 and 4 of said motion are hereby overruled.

"4. The court finds as follows concerning the motion for additional findings of fact filed by the Executrix herein under date of October 31, 1952:

"As to Paragraph 1 of said motion, the court makes the following additional finding:

"1. That between January 28, 1950, and June 20, 1950, the decedent, C. A. Good purchased 1754 shares of United Funds, Inc., at the cost of $22,556.44. That the same were purchased in joint ownership with C. A. Good and Mamie Bryson, as joint owners. That the decedent received the income from the trust shares during his lifetime and that the principal of the trust shares immediately passed to Mamie Bryson upon the death of C. A. Good.

"As to Paragraph 2 of said motion, the court makes the following additional finding:

"2. That in the last two years of the decedent's lifetime, the decedent entered into a program involving the sale of farms owned by the decedent, and that said decedent was using the income from said sale to purchase trust shares in United Funds, Inc.; that the decedent purchased 1754 shares payable to Mamie Bryson.

"Paragraphs 3, 4, and 5, of said motion are hereby overruled.

"5. The court finds that the motion for additional findings of fact filed by the Executrix under date of December 16, 1952, should be, and the same is hereby overruled.

"6. The court finds that the motion for additional conclusions of law, filed by the Executrix under date of October 31, 1952, should be, and the same is hereby overruled.

"7. That the additional findings of fact and conclusions of law herein set forth by the court, are to be considered in connection with, and in addition to the findings of fact and conclusions of law heretofore filed in this cause by the court under date of October 28, 1952.

"Dated, at Lyons, Kansas, this 14 day of Feb., 1953."

On the same date the Journal Entry of Judgment was prepared and filed. It recited the trial on May 27, and 28; the proceedings of the court on October 28; the filing of post-trial motions, and their hearing on December 5, 1952, and February 2, 1953, and continued:

"And be it further remembered that on this 14th day of February, 1953, the same being a regular judicial day of this Court and all of the officers thereof being present, said matter was again before the Court for its final judgment and rulings. All parties being represented as before. Thereupon the Court did make and enter its 'DECISION OF THE COURT ON MOTION FOR A NEW TRIAL AND MOTIONS FOR ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW' in writing and filed the same herein.

"It is therefore ordered, adjudged and decreed that the motion for a new trial, filed herein by respondent Bessie R. Good, executrix, should be and the same is hereby overruled.

"It is further ordered, adjudged and decreed and the Court renders judgment herein in accordance with the prayer of said petition, filed herein by petitioner, Mamie Bryson; that petitioner, Mamie Bryson, is adjudged to be the owner and entitled to the immediate possession of the Southeast Quarter of Section Thirty-four, Township Nineteen south, Range Seven, West of the Sixth P. M. in Rice County, Kansas; that the same is no part of the estate of the said C. A. Good, deceased, late of Rice County, Kansas and that Bessie R. Good has no right, title or equity therein. It is further adjudged and decreed that the total sum of the rents and income received and collected from said real estate by Bessie R. Good, executrix of the estate of the said C. A. Good, deceased, from the 27th day of June, 1951, less the taxes and other expense, is the sum of $3,895.53 and said executrix is ordered and directed to forthwith turn over and pay to petitioner, Mamie Bryson, said sum of $3,895.53. The costs of this proceeding are taxed against the estate of C. A. Good, deceased.

"The Probate Court of Rice County, Kansas, is ordered and directed to enter a judgment and decree in accordance with the terms, condition and provisions of this judgment and enforce the same, all as provided by law."

The notice of appeal was served and filed on April 10, 1953.

Turning now to the questions raised by the pleadings which were argued here we note that defendant's answer, aside from a general denial, raised two specific issues; first, it was denied ". . . that C. A. Good ever made any agreement with Mamie Bryson to will and devise to her . . ." the land in question as alleged by the petition.

The actual making of the contract was testified to by but one person, Eugene Bryson, husband of plaintiff. It was contended that he was not a competent witness according to our statute G. S. 1949, 60-2804, ". . . inasmuch as he was a party to the alleged contract and directly interested in its enforcement." We think it cannot be said that he was a party to the contract. The contract was that if Mrs. Bryson and her family would move to Lyons, Kansas, and take care of him and look after him as they did when he lived with them before as long as he lived he would devise and will to her a certain described farm which he owned. Mrs. Bryson was the only one

who under the contract was to receive the farm and perhaps it was accurate to say that the duty was upon her to see to it that she and her family took care of Mr. Good for the remainder of his life whether that time be short or long, and irrespective of the condition of his health or what might prove to be necessary for his proper care. The point has been specifically passed upon by this court adverse to the contentions of appellant.

In *Schuler v. Rehberg*, 145 Kan. 176, 64 P. 2d 571, in the opinion (p. 181), the contract there involved was stated as follows:

"There is evidence that plaintiff relied upon the contract or agreement she had with Herman Rehberg, which in effect was that she, with the aid of her husband, was to care for him and his home, even to furnish him a home if that should be needed, as long as he lived, and that at his death he was to leave her the home place."

In that case Carl Schuler, husband of plaintiff, testified to the contract upon which the action was based. This testimony was objected to upon the ground that he. was a necessary party to the contract and that his testimony should be stricken. This was over-ruled. This court held that there was no material error in the court's rulings upon the admission of evidence. This ruling was followed in *Popp v. Wilhelm*, 150 Kan. 753, 96 P. 2d 620, where it was held:

"In an action in the nature of specific performance of an oral contract by which in consideration of the conveyance by plaintiff to her mother of eighty acres of land the mother agreed to will the same eighty to plaintiff, the testimony of the husband of plaintiff concerning conversations between plaintiff and her mother was competent to prove the contract."

Citing also, *Bertholf v. Cornel*, 132 Kan. 122, 126, 294 Pac. 673, to the same effect.

While we hold that Mr. Bryson was a competent witness to testify to the making of the contract we need not pause to labor the point since counsel for appellant in their brief in this court (p. 18) say: "Apart from Mr. Bryson's own testimony, there was, we concede, other evidence adduced by plaintiff tending—if believed—to show that originally there was some type of agreement between Mr. Good and the Brysons that for their services Mrs. Bryson would be given some land. . ·. ." While the evidence disclosed that Mr. Good was not a talkative man, as many as eight witnesses were produced by plaintiff, some of them relatives, others friends or associates, who testified that Mr. Good told them that he was well satisfied with the care and attention that was being given him and that he was going to give Mrs. Bryson some land, and in some cases

told them what land he was going to give her and spoke of it as Mrs. Bryson's land and in one or more instances when he drove by the land he pointed it out as Mrs. Bryson's land or the land he was going to give to Mrs. Bryson for taking care of him. It is true counsel for appellant in this court have made adverse comments upon the testimony of each of those witnesses. Perhaps that was done in the trial court. It is futile, of course, for them to present such comments here. This court does not pass upon the credibility of the witnesses or the weight to be given to their testimony. That was the function of the trial court which court evidently discarded the relatively minor criticisms of their testimony and gave credence thereto. In addition to that there is the fact clearly established by the evidence that in June, 1946, when school was out the Brysons had moved to Okmulgee, Oklahoma, where they bought a home with the intention of making their home there. This last phrase is criticized by counsel for appellant but we see no reason for them doing so. Mr. Bryson testified that his wife wanted to make their home in Okmulgee because she was reared there; her mother still lived there, also a sister. While Mr. Bryson did not go there immediately to stay because he had oil drilling work in Kansas there is testimony that he was planning on purchasing a business there which he expected to operate. The Brysons did move from their home in Okmulgee to Lyons and they did care for Mr. Good until his death about four and one-half years later and did so in a manner which was very satisfactory to him as he frequently told his doctor, his preacher, and others as specifically found by the trial court. This finding is not criticized by appellant.

Indeed there is evidence that Mrs. Bessie R. Wills, who married Mr. Good March 31, 1951, knew about the agreement Mr. Good had made with Mrs. Bryson before her marriage and recognized that she was to have the land in question upon Mr. Good's death. Mr. Bryson testified that one morning about a month before the wedding in his presence and that of Mr. Kingsley Mr. Good said to his wife, "Mamie, I know where you can trade your farm, and Bessie (Mrs. Wills) wants to give her duplex—he called it—in Hutchinson, for your farm out here." And that his wife said she was not interested in property in Hutchinson. Substantially the same conversation was testified to by Mr. Kingsley. It was not contradicted by anyone.

The second specific defense made in the answer alleged: "In case it shall be established that said alleged agreement was made

. . . the said alleged agreement was fully settled and satisfied by the decedent in his lifetime by the payment and delivery to, and the acceptance by, the plaintiff of property and assets in excess of $20,000. . . ." There is no evidence in the record that the agreement was "settled and satisfied" by Mr. Good and Mrs. Bryson in his lifetime. ,

It is true that between January 28 and June 20, 1950, Mr. Good purchased seventeen hundred fifty-four shares of stock of United Funds, Inc. valued at the time of his death at $22,556.44. These were bought in the form of declarations of trust, that is, he would designate himself as trustee and name a beneficiary to whom the stock would go at his death. These were sold to him by Mr. G. A. McDonald of Hutchinson whose business is investments and who sells stock in United Funds, Inc. Beginning on April 24, 1948 to January 28, 1950, Mr. Good bought from Mr. McDonald shares of stock in which he named his three sisters as beneficiaries; Mrs. Copland, Mrs. Horning, and another sister who lived in Oklahoma City, eighteen hundred fifty-eight shares for each. When the sister in Oklahoma City died he transferred her eighteen hundred fifty-eight shares to her two surviving daughters; one-half, or nine hundred twenty-nine shares to Mrs. Avis Leatherock and Helen Allison. On January 28, 1950, he commenced to purchase shares in which Mrs. Mamie Bryson was named beneficiary and finished buying for her on July 18, 1950, having bought the total of seventeen hundred fifty-four shares. Thereafter he began buying shares in his own name without any beneficiary until he bought fifty-six hundred forty-six shares. After he married Mrs. Bessie Wills he transferred these fifty-six hundred forty-six shares to her. After his death all the shares were transferred directly to the proper beneficiaries on March 11, 1952. The witness had a conversation with Mr. Good about his purchases. He said he was purchasing Mrs. Bryson's shares because she had done as much for him as anyone in his family and he wanted her to have a similar type or similar shares. He testified, ". . . Mrs. Bryson brought Mr. Good to Hutchinson, I think, but she didn't come with him to my office. When I talked to Mr. Good in Lyons I don't recall any time Mrs. Bryson participated in the conversations; I don't know whether or not she did. I don't know whether or not Mrs. Bryson knew about his purchasing the stock for her. She wouldn't unless he told her. We are not allowed to tell who is trustee (beneficiary) unless they do; that's

why Mrs. Copland and the others didn't know until after Mr. Good's death."

Mr. Bryson testified that he did not know Mr. Good had purchased any shares in which Mrs. Bryson was named as beneficiary at the time it was done, nor until about the time of Mr. Good's marriage to Mrs. Wills. There is no evidence in the record as to when, if at all, Mrs. Bryson learned that Mr. Good had bought these shares naming her as beneficiary at any time prior to the death of Mr. Good and there is no hint in the record that Mr. Good, or anyone on his behalf, ever advised Mrs. Bryson that he had purchased these shares as a substitute or in lieu of the real property he had agreed to devise to her.

Much of the argument of counsel for appellant in this court is predicated upon remarks made by the court duing the course of the general discussions by court and counsel on December 5, 1952, and February 2, 1953. Some of these are spoken of in the brief as findings or holdings but they are not included in the findings made or judgment rendered by the court. We have copied these at length in this opinion. The phrase "findings of fact" is defined in 53 Am. Jur., p. 786, as follows:

". . . Findings of fact may be defined as the written statement of the ultimate facts as found by the court, signed by the court and filed therein, and essential to support the decision and judgment rendered thereon. . . ."

In *Foster v. City of Augusta,* 174 Kan. 324, 256 P. 2d 121, it was held:

"Remarks of a trial court indicating its theory or reasoning in arriving at a judgment form no part of the judgment and cannot limit or narrow the judgment actually rendered."

See, also, *Shelley v. Sentinel Life Ins. Co.,* 146 Kan. 227, 69 P. 2d 737; *Pool v. Gates,* 116 Kan. 195, 225 Pac. 1069; and, *The State v. Frey,* 111 Kan. 798, 208 Pac. 574. Since this case was argued in this court counsel for appellant have called our attention to *Wyatt v. Taylor,* 166 Kan. 453, 201 P. 2d 647, as laying down a different doctrine. We have examined the case and find it not in point here. There are not many cases in our reports which treat of this point. In the relatively few cases in which this type of argument is relied upon it is normally ignored.

In cases of this general character the judgment depends very largely upon the facts of each particular case. Some general rules may be laid down, for example, when the duties to be performed

by the promisee pertain to the business of the promisor and are for a definite or ascertainable time and the financial value of such services are shown by competent evidence and the promisor or his estate has money available to pay the promisee the courts normally require payment in money. While there are many cases on this point it is well illustrated in *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364.

When the duties to be performed by the promisee are personal to the promisor such as stay with, or to look after and care for the promisor, as in his illness and/or his old age, particularly when the time is indefinite as for the remainder of the lifetime of the promisor and where the promisee has fully performed the duties imposed upon him by the contract the courts normally require the specific performance of the contract even though that results in a financial advantage to one of the parties. There are many cases on this point but it is well illustrated in *In re Estate of Boller,* 173 Kan. 30, 244 P. 2d 678; *In re Estate of Spark,* 168 Kan. 270, 212 P. 2d 369; *In re Estate of Hutchison,* 151 Kan. 333, 99 P. 2d 992; and, *Bless v. Blizzard,* 86 Kan. 230, 120 Pac. 351.

Reverting to the specific defenses of the answer. It is no longer contended that the contract sued upon was not made, neither is it contended that it was not carried out by the plaintiff to the full satisfaction of Mr. Good. Neither is it seriously contended that there was any settlement of the contract during the lifetime of Mr. Good. Such a settlement would have to be with the knowledge and consent of both Mr. Good and the plaintiff. They do, however, mention the contents of the will and the testimony of the scrivener.

The will was written by Mr. Rubert G. Martin, a reputable attorney of Lyons. He testified, ". . . Mr. and Mrs. Good came into my office one afternoon, and Mr. Good stated he wanted me to draw a will. I asked him if he had decided what disposition he wanted to make of his property, and he told me he had. He said, 'I have taken care of all the rest of them with bonds or trust certificates'—I have forgotten what he called them—'and I want to leave all my property to Mrs. Good.' I asked him whether he wanted to make any present disposition of any other property, and he said no, . . . His mental condition was clear and concise; he definitely knew what he wanted to do and was doing, and had the mental capacity to draw a will." The will had two disposing paragraphs:

"First: I direct that all of my just debts, including my funeral expenses, be paid by my Executrix.

"SECOND: I give, devise and bequeath to my wife, Bessie R. Good, all property of which I may die seized and possessed, whether it be real, personal or mixed and wheresoever located, to be hers in fee simple absolute forever."

In the third paragraph he nominated and appointed his wife, Bessie R. Good, sole executrix and directed that she be not required to give bond.

The question is propounded as to how that can be reconciled with plaintiff's theory that Mr. Good had agreed to devise this property to her and that the certificates he purchased for her in United Funds, Inc. were not intended by Mr. Good as being a settlement of that contract, in view of the fact that there is ample uncontroverted evidence that Mr. Good was a man of his word. We think it can be reconciled in this way. Mr. Good no longer regarded the land in question as his property. He had definitely made the contract by which Mrs. Bryson should have it on his death. He may have considered it an obligation which he owed and was covered by the first disposing clause, in any event, that it would no longer be his property at his death and would not pass to Bessie R. Good. This interpretation is in harmony with the unquestionably high character of Mr. Good and we prefer to use it. The interpretation of the will that he intended to violate his contract with the plaintiff and give that land to his wife would impute action and motive to him, perhaps prompted by his wife, which we decline to impute to either of them.

Counsel for appellant do not ask us to remand this case for a new trial generally. They respectfully state, ". . . nothing could be gained by requiring the parties to reintroduce their same testimony to the same judge. Instead, the trial court should be instructed regarding the pertinent legal principles, told to disregard the testimony of Mr. Bryson, and directed to reconsider the evidence already introduced herein, and to render a new decision conforming to the rules and doctrines set forth in this Court's opinion." For reasons already stated we decline to do this.

We find no error in the record. The judgment of the trial court is affirmed.

## APPENDIX A.

### PETITION.

"Comes now Mamie Bryson and shows to the Court that her true place of residence is 420 South Bell Street, Lyons, Rice County, Kansas.

"For her claim and cause of action against the estate of the above named C. A. Good, deceased, who was also known as Charles A. Good, and whose Will and estate is being probated in the above named Court and cause, petitioner, Mamie Bryson, alleges and states:

"That the said C. A. Good was born about December 12th, 1869, and spent most all of his lifetime in Rice County, Kansas; that about the year 1895 he married Bertha Wills, with whom he lived as husband and wife for more than fifty years; that the said Bertha Wills Good died in the month of August, 1945, at which time she and Mr. Good had accumulated Rice County, Kansas, farm land and other property of the value of approximately a quarter of a million dollars; that C. A. Good was the sole heir at law of Bertha Good and inherited all of her estate.

"That on and prior to the 18th day of October, 1945, petitioner and her family resided in their home at 420 S. Bell St., in Lyons, Kansas; about October 18th, 1945, petitioner and her husband, Eugene Bryson, sold this home to C. A. Good.

"That from about the fore part of November, 1945, until school was out in the spring of 1946 Mr. Good and petitioner and her family lived in this home together, during which time he took his meals with the family and otherwise occupied the home as a member of the family; also during this period petitioner washed, ironed and mended his clothing, and on numerous occasions petitioner or her husband or both of them, either in Mr. Good's car or in the Bryson car took Mr. Good to look after his farm land and other business, and to Church and the doctor, and to his burial lot and by these and other ways treated him as a member of the family.

"That about the 15th day of June, 1946 petitioner and her family moved from Lyons, Kansas to Okmulgee, Oklahoma with the intention of making their permanent home.

"Petitioner further alleges that in the fore part of August, 1946 she came to McPherson, Kansas, from Okmulgee, Oklahoma to visit her husband, who was working on an oil well, as a driller, in McPherson County.  About the 8th day of August, 1946 she came to Lyons, Kansas for a visit with Mr. Good.  At that time Mr. Good had a lady housekeeper, who, with her young son, were living there in the home with Mr. Good.  While petitioner was visiting him on the 8th day of August, 1946 the said C. A. Good made an oral offer and proposition to petitioner that if she and her family would move

back to his home at 420 S. Bell St., in Lyons, Kansas, and take care of him and look after him as they did when he lived with them from Nov. 1945 to June of 1946, as long as he lived, he would devise and will to her the Southeast Quarter of Section Thirty-four, Township Nineteen, Range Seven, West of the Sixth P. M. in Rice County, Kansas. Petitioner returned to McPherson and had a conversation with her husband about this offer and proposition and on the 9th day of August, 1946 she and her husband came to Lyons· to see Mr. Good. Mr. Good then and there stated to petitioner and her husband that he was not satisfied with the lady housekeeper and that he needed someone to look after him and take care of him, and then and there repeated his oral offer and proposition to petitioner to the effect that if she and her husband and family would move back to his home in Lyons, Kansas and take care of him and look after him as they did when he lived with them before, as long as he lived, he would will and devise to her the Southeast Quarter of Section Thirty-Four, Township Nineteen, Range Seven, West of the Sixth P. M. in Rice County, Kansas. After talking the matter over with her husband petitioner told Mr. Good that she would accept the offer and proposition and informed him that she and her family would move back to Lyons, as soon as they could conveniently do so, and begin the performance of her part of the contract.

"Petitioner further alleges that about the 25th day of September, 1946 she and her family moved from Okmulgee, Oklahoma to the home of Mr. Good in Lyons, Kansas, and began the performance of her part of the contract. He was a person who liked the comforts of congenial home life; he was seventy-six years old; he was not in good health; because of his age he was hardly able to drive his automobile; and was in almost constant need of someone to look after him.

"That upon moving to the home of Mr. Good petitioner and her family immediately proceeded to do everything possible to treat Mr. Good as though he were a member of the family. During all of the remainder of his lifetime until his remarriage on the 31st day of March, 1951, petitioner washed, ironed and mended his clothing; prepared his meals, which he took along with the family; served a birthday cake and birthday dinner, on each of his birthdays, for the family and his relatives and friends; provided sleeping quarters and food for his out of town relatives and friends when they visited him;

at least two times each week petitioner or her husband or both went with him to see about his farms and other business; nursed him when he was sick on numerous occasions; assisted him in keeping track of his business and income and preparing his income tax returns; took or went with him to church whenever he felt like going; consulted with him about all of his business matter, including the matter of distributing a portion of his estate to his relatives and relatives of his deceased wife, Bertha; nursed him in the home while he was convalescing, as a result of two surgical operations; took him to the Lyons, Kansas, cemetery on numerous occasions and assisted him in rearranging the headstone on his burial lot and in moving the body of his deceased sister to his burial lot; took him to Wichita, Kansas, in the summer of 1950, where he had an operation on one of his eyes, helped nurse and care for him while he was in the hospital following the operation, brought him home and nursed and took care of him while he was convalescing.

"Petitioner further alleges that about the middle of December, 1950, she learned that Mr. Good was courting one Bessie Wills, who resided in Hutchinson, Kansas, and who was the widow of John Wills, deceased, late of Rice county, Kansas, and a sister-in-law, by marriage of Mr. Good. That on several occasions thereafter petitioner or her husband or both of them took Mr. Good to Hutchinson to the home of Mrs. Wills and at a stated time would return to the home of Mrs. Wills and bring Mr. Good back to Lyons; and when Mr. Good desired to go to Hutchinson by bus, to visit Mrs. Wills, petitioner or her husband or both of them would take Mr. Good to the bus station in Lyons and meet him at the bus station later in the same day and take him home; on several occasions helped entertain Mrs. Wills when she came to the home at 420 S. Bell St., in Lyons, to visit Mr. Good.

"On February 15, 1951, petitioner and her husband bought back from Mr. Good the home located at 420 S. Bell, in Lyons, Kansas.

"About the middle of January, 1951 petitioner and her family learned that Mr. Good and Mrs. Wills were going to get married. The wedding date was set for March 31st, 1951. Mr. Good stated to petitioner and her family that he wished to get married in their home. Shortly before the time for the wedding petitioner made several trips to Hutchinson and brought back to Lyons Mrs. Wills' clothing, canned goods, lamps, plants and other personal effects, storing part of them in the home at 420 S. Bell and taking the rest to a room Mrs. Wills had rented in the home of Mrs. Barnes.

"Petitioner further alleges that she prepared all of the details for the wedding in the home; she bought the flowers and the wedding cake and prepared and served the wedding supper. Mr. Good and Mrs. Wills were married in the home, by Reverend Smith of the Lyons Methodist Church, on March 31st, 1951; the only other persons present being petitioner and her family, Mr. Bryson having come from Medicine Lodge, Kansas, to attend the wedding. After the wedding petitioner rearranged her furniture and she and her family moved to the basement apartment in the home while Mr. and Mrs. Good commenced building a new home on East Avenue South in Lyons. On numerous occasions after the wedding petitioner took Mr. and Mrs. Good on trips around the county and otherwise looked after Mr. Good in any way that she could.

"Petitioner further alleges that in addition to the facts as set out above she and her family bestowed upon Mr. Good all of the love, affection, attention and care that a child should give a parent or near relative, from September 1946 until his death. That petitioner has fully and completely performed all of her part of the oral contract and agreement made between she and Mr. Good on the 9th day of August, 1946, as set out above.

"Petitioner further alleges that the said C. A. Good died on the 27th day of June, 1951. That shortly prior to his death and on the 17th day of April, 1951, he made and executed a last Will and Testament by the terms of which he devised and bequeathed all of his estate to his wife, Bessie Wills Good. That said last Will and Testament has been admitted to Probate and is now being Probated in the above named Court and Cause. Said last Will and Testament is made a part of this pleading by reference.

"That by the terms of said Will the said C. A. Good failed to will and devise to petitioner the above described quarter section of land and failed to fulfill his part of the contract and agreement between he and this petitioner, as set out above. That Bessie R. Good, as executrix of the estate of the said C. A. Good, deceased, is now and has been since the death of Mr. Good in the possession of the above described land and has received and collected rents and profits therefrom, the amount of such rents and profits being unknown to petitioner.

"Wherefore and by reason of all of which petitioner prays for an order and judgment of this Court decreeing a specific performance of the contract between petitioner and C. A. Good, as set out

above; that petitioner be adjudged to be the owner and entitled to the immediate possession of the Southeast Quarter of Section Thirty-Four, Township Nineteen, Range Seven, West of the Sixth P. M. in Rice County, Kansas; that the same be adjudged to be no part of the estate of C. A. Good, deceased, and that Bessie R. Good be adjudged to have no right, title, equity or interest therein; that Bessie R. Good executrix be required to account to this Court for all rents and profits received therefrom since the 27th day of June, 1951, and that she be ordered to pay to this petitioner all such rents and profits so received; and that petitioner have such other and further relief as may be just and equitable, including the costs of this proceeding."

## APPENDIX B

### ANSWER

"Comes now Bessie R. Good and for her answer to the Petition filed herein by Mamie Bryson, said Bessie R. Good admits and states that she is the duly appointed, qualified and acting Executrix of the Estate of C. A. Good, deceased, and that C. A. Good died on the 27th day of June, 1951, and that his estate is being probated in the Probate Court of Rice County, Kansas.

"Said Executrix further admits the place of residence of said Mamie Bryson, the petitioner; the date and place of birth of the decedent, C. A. Good; marriage to Bertha Wills, and the death of Bertha Wills Good.

"The executrix further admits that Mamie Bryson and her husband bought back from Mr. Good, the home which he owned at 420 S. Bell in Lyons, Kansas, and that the date of said purchase was on February 15, 1951, and the Executrix further admits the date of marriage between C. A. Good and Bessie R. Wills.

"The Executrix for further answer to the Petition of Mamie Bryson denies each and every allegations of fact contained in said Petition except such as heretofore admitted.

"Executrix specifically denies that C. A. Good ever made any agreement with Mamie Bryson to will and devise to her the Southeast Quarter (SE¼) of Section Thirty-Four (34), Township Nineteen (19) South, Range Seven (7), West of the 6th P. M. in Rice County, Kansas, as alleged by the petitioner, Mamie Bryson.

"In case it shall be established that said alleged agreement was made between the plaintiff, Mamie Bryson, and the decedent, C. A.

Good, which the Executrix respectfully denies, the said alleged agreement was fully settled and satisfied by the decedent in his lifetime by the payment and delivery to, and the acceptance by, the plaintiff of property and assets in excess of $20,000; and as a result thereof no liability exists by virtue of the said alleged agreement.

"WHEREFORE, the Executrix prays that the petitioner, Mamie Bryson, take nothing by her petition, and that the costs of this proceeding be assessed against the petitioner, Mamie Bryson, and that the Executrix have such further and additional relief as to the Court may appear just and equitable."