MONDAKOTA GAS COMPANY, a corporation, Plaintiff and Appellant, v. FRANK BECKER, Defendant and Respondent.

No. 11329.
Submitted Sept. 12, 1968. Decided Sept. 27, 1968.
445 P.2d 745.

Derry, Hanser & Derry, Guy C. Derry (argued), Billings, for appellant.

Russell L. Culver (argued), Baker, Armin M. Johnson, Minneapolis, Minn., for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from the district court of Fallon County. The action stems from an agreement made in 1941 between the plaintiff-appellant and the defendant-respondent. The com-

plaint was filed in 1956, fifteen years after the agreement was made, and the cause finally brought to trial in October, 1966. At the conclusion of plaintiff's case in chief the trial court granted defendant's motion to dismiss and entered judgment for the defendant. The plaintiff moved to have the trial judge make findings of fact and conclusions of law under Rule 41(b), M.R.Civ.P. Plaintiff also moved for a new trial. Plaintiff now appeals from the denial of those motions, and here contends that the findings of fact and conclusions of law were not specific enough to meet the requirements of Rule 41(b), M.R.Civ.P.

The plaintiff in its complaint alleged that the original agreement was made in 1941 whereby the defendant agreed to drill two gas wells, guaranteeing that each would produce 100,000 cubic feet of gas per day. It appears that the wells were completed in 1941, however, plaintiff alleged that they did not meet the guarantee made by the defendant. It was also alleged that the plaintiff paid the defendant for the cost of drilling the wells and made royalty payments on gas produced by the wells between 1941 and 1954. Plaintiff's theory of action in the district court was that there was a breach of contract when the wells failed to meet the guarantee and that since the money was mistakenly paid to the defendant, the defendant should make restitution on the grounds of unjust enrichment.

The only two wells in dispute here are the Becker-Foster and the Becker-State wells located in Fallon County, Montana. Plaintiff in his brief has also attempted to include the N.P. well in Fallon County but was in error to try to do so because the original complaint covered only the Becker-Foster and the Becker-State wells, and no amendments were allowed to that complaint. Certain evidence pertaining to the N.P. well was allowed in by the good graces of the trial court, but such evidence was clearly extraneous and cannot be considered on this appeal.

The plaintiff makes four specifications of error, but then went on to say in its brief that the entire case hinges on one of those specifications: Whether the findings of fact and conclusions of law were specific enough to comply with Rule 41(b), M.R.Civ.P.

Rule 41(b) provides, in part: "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or failure to join a party under Rule 19, operates as an adjudication upon the merits."

From a reading of the record of the district court proceedings it is apparent that the district court dismissed because the plaintiff had "shown no right to relief." However, because that court did not state otherwise the dismissal and judgment acted as an adjudication upon the merits and it became necessary for the court to make findings of fact and conclusions of law.

The only evidence on the production of the two wells in question was testimony given by John Wight, who at one time was manager of Mondakota Gas Company and also manager of its predecessor, Mondakota Development Company. During the testimony of Wight, plaintiff's attorney attempted to qualify him as somewhat of an expert in the drilling and testing of oil and gas wells by showing his many years of

experience in the oil and gas business. We say "somewhat of an expert" because Wight admitted he was not an engineer.

Wight testified that he was personally present on different occasions when he had engineers run tests on all the wells Becker drilled for the plaintiff. On direct examination Wight never once testified that production in the two wells in question was never the guaranteed minimum. Wight did testify that the pressure in one of the wells in question was so low it "wouldn't put any gas in the line." The line he was referring to was one owned by Montana-Dakota Utilities Company (MDU) and which the plaintiff had succeeded in having declared to be a common carrier in order that it might transport its own gas to market. It was later brought out that the reason plaintiff's well would not "put any gas in the line" was because MDU had subsequently increased the pressure in its line. So in the direct examination of Wight by plaintiff's attorney it was never shown that the wells would not produce 100,000 cubic feet of gas per day; it was merely shown that pumping became necessary in order to make use of the MDU line.

In cross examination Wight's direct testimony was impeached in two respects. First, Wight admitted that he made statements in 1951 and 1953 at Mondakota Gas Company shareholders' meetings to the effect that the wells in question were producing and that Mondakota still owed Becker money. The weight of that cross examination completely nullified any claim by the plaintiff that Becker was overly compensated and unjustly enriched.

Second, in 1949 in a deposition taken in connection with a suit filed by plaintiff against MDU, Wight stated that the two wells in question were each capable of producing over 300,000 cubic feet per day. Wight tried to justify that statement by contending he relied on statements made by Becker. He so contended even in view of the fact that he, on direct examination, admitted to having the wells tested several times by

engineers of his own choosing. It is also well to remember that in the trial of the instant case the plaintiff never introduced any of the reports made by engineers hired by Wight. It would seem that if those reports had shown production to be below 100,000 cubic feet per day the plaintiff would have lost no time in seeing they were introduced.

To reiterate, the plaintiff's entire case rested on two contentions: Plaintiff claims the wells would not produce 100,000 cubic feet of gas per day yet Wight in 1949 contended that each well was capable of producing in excess of 300,000 cubic feet per day. Second, plaintiff claims Becker was unjustly enriched because the wells did not meet the guarantee; that is, the unjust enrichment claim rested on whether the wells met the guarantee. Since Wight's testimony that they did not meet the guarantee was totally impeached by his 1949 deposition we are left with no evidence at all on whether they met the guarantee. In such a situation it is impossible to tell whether there was any unjust enrichment of Becker.

Even if it is admitted that plaintiff's proof failed, the plaintiff still contends that the findings of fact and conclusions of law were not detailed enough to meet the requirements of Rules 41(b) and 52(a). The pertinent portion of the judgment below held: "* * * the plaintiff, having submitted evidence and having rested its case, whereupon the defendant having properly made a motion to dismiss and it appearing to the Court, after having heard plaintiff's case, that no cause of action or claim exists or has been proven; IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that said cause be and the same is hereby dismissed and the plaintiff take nothing thereby."

Since the Montana Rule 41(b) is identical to the Federal Rule 41(b) this Court has chosen to look to the federal cases for guidance. Apparently at one time there was a difference among the federal courts as to whether a trial court must make findings of fact when it dismissed under 41(b). See

Moore's Federal Practice, Second Edition, Volume 5, page 1010-1011, paragraph 41.01[7]. However, as stated there the Federal Rule finally came to be that findings of fact must be made. The Ninth Circuit has always followed the rule that findings must be made when there was a dismissal under 41(b). See Young v. United States, 9 Cir., 111 F.2d 823 (1940).

We think it is quite evident that a "finding of fact" will vary from case to case. As defined in 53 Am.Jur., Trials, Section 1131, page 786: "Findings of fact may be defined as the written statement of the ultimate facts as found by the court, signed by the court and filed therein, and essential to support the decision and judgment rendered thereon." See also In re Good's Estate, 175 Kan. 576, 266 P.2d 719, 729 (1954).

From the evidence and testimony in the instant case, it is clear that any findings that the court could make would be in the negative: Namely, that the plaintiff failed to prove the two wells did not meet the terms of the guarantee (were not capable of producing 100,000 cubic feet of gas per day) and that the plaintiff failed to prove that the defendant was unjustly enriched (because a showing of unjust enrichment must be based upon a showing that the two wells did not meet the guarantee).

This Court feels that the district court by holding that "no cause of action or claim exists or has been proven" in essence made the two negative findings as set forth above and we are not going to reverse merely to force the court below to make the two negative holdings we have set forth. This case should not be taken to mean that a holding such as the one in this case will be sufficient in every case where there is a dismissal under 41(b) or 52(a) which both require findings. We merely hold here that because of the peculiar circumstances, evidence and testimony the findings as set forth by the trial judge were sufficient to meet the requirements of 41(b) and 52(a).

The plaintiff also contends that the trial court should

have made conclusions of law as required by Rule 52(a) when an action is tried without a jury. Conclusions of law have been defined as "The decision of the court on the facts found by the court when a trial has been had without a jury." C.I.T. Corporation v. Elliott, 66 Idaho 384, 159 P.2d 891, 897 (1945). Cf. Sandall v. Hoskins, 104 Utah 50, 137 P.2d 819, 822 (1943) which held "The conclusions of law are those conclusions which the judge concludes flow from the ultimate facts as he finds them illuminated by subsidiary facts." It is apparent to this Court that the conclusions of law of the lower court were that the plaintiff's complaint should be dismissed.

The judgment is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN C. HARRISON, concur.