No. 13807

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

JACK C. HOLLOWAY,

              Plaintiff and Appellant,

    -vs-

UNIVERSITY OF MONTANA,

              Defendant and Respondent.

---

Appeal from:  District Court of the Fourth Judicial District,
             Honorable Edward Dussault, Judge presiding.

Counsel of Record:

    For Appellant:

        Milodragovich, Dale & Dye, Missoula, Montana
        Harold Dye argued, Missoula, Montana

    For Respondent:

        George L. Mitchell argued, Missoula, Montana

---

                    Submitted:  June 9, 1978

                         Decided AUG 21 1978

Filed:  AUG 21 1978

*Thomas J. Kearney*
                      Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal from a judgment against appellant Jack C. Holloway in the Fourth Judicial District Court, Missoula County.

Holloway sought a declaratory judgment that he was entitled to a Masters of Business Administration degree from the University of Montana. He alleged his candidacy for the degree and that the University refused it for the sole reason he had failed to obtain a grade of "C" or better in a course entitled, "BA650, Quantitative Methods". A nonjury trial was held in District Court December 6, 1976. The sole issue was whether Holloway's graduate student advisor had orally waived the Business School requirement that he obtain a "C" or better grade in Quantitative Methods described as a "core course." The District Court denied Holloway's request for a declaratory judgment, adopting in full the University's proposed findings of fact and conclusions of law and rejecting Holloway's motion for additional findings.

During the academic years 1966-67 and 1967-68, Holloway's graduate student advisor was Dr. Jack Kempner, a professor in the School of Business. Holloway received a grade of "D" in Quantitative Methods. He thereupon approached Dr. Kempner concerning his situation. The grade adversely affected Holloway's academic record in two ways. It dropped his grade point average below the required 3.0 (on a 4.0 scale) and the grade did not meet the requirement that a candidate for a graduate degree must receive a "C" or better for the course to count toward his master's degree.

Holloway testified that Dr. Kempner had told him Kempner was of the opinion that all that was required was a 3.0 average. Appellant subsequently took four other courses at the University and succeeded in raising his average to the required 3.0. He did not repeat the Quantitative Methods course. Upon

-2-

completion of a professional paper appellant made application for his degree in 1973. He was informed by the Dean of the Business School that his "D" grade in Quantitative Methods could not be counted toward the degree and the course would have to be retaken. Further, he could take an equivalent course in the San Francisco area where he was then residing, which course the University would recognize.

Dr. Kempner, who testified at the trial, recognized Holloway but had no recollection of ever having told Holloway he would not have to retake the course in Quantitative Methods. However, Kempner further testified he had never waived any "six hundred core course for any MBA student", and in his recollection no student had ever received a waiver of the Quantitative Methods course.

Considerable testimony was heard concerning the University's policy on granting a waiver of a required course and the "unwritten" nature of that policy.

The issues presented on appeal are two-fold:

1. Is Holloway's testimony about the waiver granted to him uncontroverted as a matter of law?

2. Was the District Court's finding of fact, simply stating Dr. Kempner had not granted a waiver to Holloway, sufficient as an ultimate fact?

Holloway contends the evidence was insufficient to support the judgment because he positively and unequivocally testified that an oral waiver had been granted him by Dr. Kempner and because Dr. Kempner's testimony that he did not recall any conversations failed to directly contradict Holloway's testimony. General rules are given in support of this contention:

> "The rule that the trial judge may not disregard
> uncontroverted credible evidence is fundamental."
> In Re Minder's Estate (1954), 128 Mont. 1, 270
> P.2d 404; Higby v. Hooper (1950), 124 Mont. 331,
> 221 P.2d 1043; State ex rel. Nagle v. Naughton

-3-

(1936), 103 Mont. 306, 63 P.2d 123; Haddox v. Northern Pacific R. Co. (1911), 43 Mont. 8, 113 P. 1119."

"* * * the testimony of a witness that he does not remember whether a certain event or conversation took place does not contradict positive testimony that such event or conversation did take place. (citing cases)". Bender v. Roundup Mining Co. (1960), 138 Mont. 306, 356 P.2d 469.

Holloway correctly states the general rule, but falls short of sustaining his contention for two reasons. First, considerably more goes into a trial judge's examination of the evidence than Holloway contends. Second, a trial judge is not bound to find in favor of a party simply because one of his witness' testimony is not directly controverted. The evidence in its entirety forms the basis of the Court's decision.

In O'Sullivan v. Simpson, et al. (1949), 123 Mont. 314, 212 P.2d 435, this Court, citing considerable authority, examined the many qualifications and extensions to the general rule that a trial court cannot disregard uncontroverted credible evidence. To summarize: statements may be so inherently improbable the Court is induced to disregard them. Testimony may be contradicted by other facts. There may be so many omissions in the testimony that the witness' whole story is discredited. The witness' manner of testifying, his appearance and demeanor may be considered. Attendant circumstances may cast suspicion upon the narration of a particular event. Finally, the interest of any witness in the result of the trial or any bias he might have may properly be considered.

We find the record supports the trial court's decision on this point. For example, the University's requirements for a Masters of Business Administration degree were spelled out in its catalog. Dr. Kempner testified as to the Business School's

-4-

standard procedure for handling requests for waivers, and that he did not forget to use it. Dr. Kempner also testified that "six hundred level" graduate courses, specifically Quantitative Methods, were never waived, and that he had never personally waived a core course. When coupled with the intangible factors a trial judge considers in making a decision, the considerable record established in this case would make it unreasonable to conclude the judgment was unsupported by the evidence.

Holloway specifies error in that the District Court's single finding of fact on the contested issue was insufficient to support the judgment, and additional findings, as requested by appellant, should have been made. The applicable finding of fact states:

> "Dr. Jack Kempner, Plaintiff's graduate student advisor, did not grant Plaintiff a waiver of the required core course of Business Administration 650, Quantitative Methods."

It is contended that specific findings on appellant's credibility and the nature and extent of the authority possessed by Dr. Kempner should have been made. As to the latter, the University admitted in its answer to appellant's Interrogatory No. 10 that Dr. Kempner had at least apparent authority to grant the waiver. Therefore, this was not a material issue requiring a specific finding.

Rule 52(a), M.R.Civ.P., provides that, "in all actions tried upon the facts without a jury or with an advisory jury, the Court shall find the facts specially and shall state separately its conclusions of law thereon." Since the adoption of Rule 52(a) in Montana, the sufficiency of findings of fact has been considered only briefly. In Mondakota Gas Co. v. Becker (1968), 151 Mont. 513, 445 P.2d 745, this Court said:

"We think it is quite evident that a 'finding of fact' will vary from case to case. As defined in 53 Am. Jur. Trials, Section 1131, page 786: 'Findings of fact may be defined as the written statement of the ultimate facts as found by the court, signed by the court and filed therein, and essential to support the decision and judgment rendered thereon.'"

Despite the infrequency with which this Court has dealt with the sufficiency of findings of fact, neighboring jurisdictions (that have adopted rules identical to Rule 52(a)) have dealt with the issue on numerous occasions.

"The trial court's function in nonjury cases is to find ultimate facts from conflicting evidence; and if these findings are sustained by competent, substantial, although conflicting evidence, such will not be disturbed on appeal." Hafer v. Horn (1973), 95 Idaho 621, 515 P.2d 1013.

"With these principles in mind we turn to the finding in question and note, first, the classic rule that findings must state ultimate facts; they should not relate evidentiary facts relied upon by the court to reach the ultimate facts." Seeley v. Combs (1966), 52 Cal.Rptr. 578, 65 C.2d 127, 416 P.2d 810.

"In regard to the matter of the sufficiency of findings of fact, a substantial compliance with Rule 52, Utah Rules of Civ.P., is sufficient and findings of fact and conclusions of law will support a judgment though they are very general, where they in most respects follow the allegation of the pleadings. Findings should be limited to the ultimate facts and if they ascertain ultimate facts and sufficiently conform to the pleadings and the evidence to support the judgment, they will be regarded as sufficient, though not as complete as might be desired." Pearson v. Pearson (Utah 1977), 561 P.2d 1080.

In the words of counsel for the appellant, "the case proceeded to trial on the basis of the single ultimate issue

of whether a waiver was given by Dr. Kempner in the manner alleged." Holloway's credibility was not a material issue and no finding of fact was required concerning his credibility simply because Holloway speculates it was considered in the trial judge's decision. The District Court made its finding of fact on the material issue alleged in the pleadings. The record supports that "ultimate fact".

We have held (Mondakota Gas Co. v. Becker, supra) and now hold, in line with what we find other courts hold, that Rule 52(a) M.R.Civ.P., which obliges a trial court without a jury to "find the facts specially," requires findings of ultimate facts and not evidentiary facts. Sometimes (and this case is an example) a situation exists where the ultimate fact stated by the Court can also be read as a conclusion of law. Thus, here it is a statement of ultimate fact that "Dr. Jack Kempner * * * did not grant Plaintiff a waiver of the required core course * * * ", but that same statement could also be read as a conclusion of law. The statement does not thereby lose its character as a finding of ultimate fact, however.

The purpose of requiring "ultimate facts" in a court's findings is three-fold: (a) to aid the trial court in making correct factual decisions and reasoned application of law to facts; (b) to define for purposes of res judicata and estoppel by judgment the issues there adjudicated; and (c) to aid the appellate court. Moore's Federal Practice, Vol. 5A, p. 2666, Section 52.03(3)(Rel. No. 9). An ultimate fact is one deduced by the Court from evidentiary facts, but evidentiary facts should not be part of the Court's findings, because evidentiary facts are incapable of becoming res judicata. Abeles v. Wurdack (Mo. 1955) 285 S.W.2d 544, 548. The function

-7-

of the trial court in determining the ultimate facts from the evidentiary facts is respected in Rule 52(a), and such ultimate fact findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

It is because the statement here involved could be read both as a conclusion of law and as a finding of ultimate fact that this case is distinguishable from those cases relied on by Holloway as supporting his contention that this particular finding is insufficient to support the judgment. In this case the material fact issue is determined by the trial court in an expression of ultimate fact. No more is required under Rule 52(a).

It is axiomatic that a District Court makes findings only as to material issues of fact related to the cause of action, Thompson v. Bantz (1959), 136 Mont. 210, 215, 346 P.2d 982, 985, and that a Court may not make findings upon matter outside the material issues. See: O'Brien v. Drinkenberg (1910), 41 Mont. 538, 544, 111 P. 137, 139; Dutro v. Kennedy (1889), 9 Mont. 101, 107, 22 P. 763, 764. Here the credibility of Holloway was not a material issue related to the cause of action; rather, it was only a factor to be considered in weighing the evidence. It is not a necessary or sole implication that because the Court found against the direct testimony of Holloway, that automatically the Court found his testimony to be false. It may be as easily assumed that, in the light of the weight of other evidence against the testimony of Holloway, that Holloway could have been mistaken or he may have misunderstood the tenor or meaning of what Dr. Kempner told him. Whether Holloway was mistaken, or else whether his testimony was false, was not a material issue in the case on which the

Court had to make a finding. The record afforded sufficient evidence that no waiver had been granted without any finding necessary as to the truth of Holloway's testimony.

For the reasons expressed, the judgment of the District Court is affirmed.

_____
                                                Justice


We Concur:

_Frank I. Haswell_____
            Chief Justice

_John Conway Harrison_____

_Gene B. Daly_____

_Daniel J. Shea_____
            Justices