No. 83-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

BRIGHAM YOUNG UNIVERSITY, a corp.,

　　　　Plaintiff and Appellant,

　-vs-

SHIRLEY M. SEMAN, JAMES R. KOONTZ,
and ALLEN H. BLOOMGREN,

　　　　Defendants and Respondents.

_____

APPEAL FROM:　District Court of the Eighth Judicial District,
　　　　　　　In and for the County of Cascade,
　　　　　　　The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

　　For Appellant:

　　　　Cure & Borer; Maxon Davis, Great Falls, Montana

　　For Respondents:

　　　　Smith, Baillie & Walsh; James R. Walsh, Great Falls,
　　　　Montana

_____

Submitted on Briefs:　July 21, 1983

Decided:　November 3, 1983

Filed:

NOV 3 - 1983　　*Ethel M. Harrison*

―――――――――――――――――――
　　　　　　　　Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by Brigham Young University from a judgment in its favor against the defendants in the sum of $1,897.20 entered in the District Court, Cascade County. The respondents Shirley M. Seman, James R. Koontz, and Allen H. Bloomgren (SKB) have cross-appealed from the same judgment.

This controversy arises out of a written lease agreement between Brigham Young University as lessor and SKB as lessees or tenants of office space described as suite no. 306 of the Strain Building, Great Falls, Montana. The lease provides for a term from January 1, 1979 to January 1, 1984.

The first principle issue arises from a lease provision which provided that SKB would not assign the lease nor sublease the same without the consent of BYU, "which consent shall not be unreasonably withheld." The second principle issue is the amount of damages to be awarded, depending upon our decision as to the effect of the consent provision.

We affirm the judgment of the District Court but find that revision of the damages awarded is necessary and remand for that purpose.

SKB occupied the leased office space from January 1, 1979 until late 1980 when SKB relocated their firm's offices to another building in Great Falls, the executive plaza. Thereafter, SKB endeavored to find a new tenant to take over the Strain Building lease for the balance of the lease term. In June 1981, SKB proposed to BYU's building manager, Lester R. Rodger, that suite 306 be sublet to the Montana Board of Parole and Probation, a state agency.

Rodger testified that at about the same time as he was approached by SKB for consent to the sublease, he was also stopped by a number of existing tenants in the Strain Building who indicated opposition to the possible tenancy of the parole board. Rodger consulted counsel, and thereafter circulated a questionnaire to the existing tenants. A number of the tenants indicated on their returns to the questionnaire that they opposed the sublease to the state agency. One tenant in particular, Dr. James Crouch, threatened to file a lawsuit if consent were granted and the parole board became a tenant of the Strain Building.

Following the return of the questionnaires, BYU advised SKB that the consent of BYU to the proposed sublease was denied. In response, SKB advised BYU that it considered the lease terminated as a result of the refusal and that thereby SKB was relieved of any further obligation to pay rent, effective July 2, 1981. SKB returned the keys to suite no. 306.

The proposed sublease would have commenced on August 1, 1981 for a period of two years to August 1, 1983. The sublessee would have commited itself to pay $850 per month for the first year to SKB. The second year payments would have included an increase equal to six to ten percent of the first year's recital. These rental payments were less than those agreed to under the primary lease between BYU and SKB. Under the sublease, the parole board would occupy only eight of the ten rooms contained in suite no. 306.

After the refusal of SKB to pay rent after July 2, 1981, BYU attempted to rent suite no. 306 in an effort to mitigate damages. Eventually, the tenants who occupied a smaller suite, no. 304 in the building, Waddell and Reed moved from

suite no. 304 to suite no. 306. That move took place on June 1, 1982. Thereafter BYU filed suit against SKB seeking $11,624.39 for unpaid rent from July 3, 1981 to June 1, 1982 and an additional $5,900.00 representing the difference between the rent received from Waddell and Reed on suite no. 306 and the losses incurred because of the vacancy in suite 304, after Waddell and Reed moved.

BYU claimed in the District Court, and now claims that the withholding of consent to the sublease was not unreasonable because (1) the parole board was not paying enough to SKB to cover SKB's obligations under the primary lease; (2) two rooms of the suite would not be occupied by the parole board under the sublease; (3) tenants had come to the BYU building manager to express concern about the rumor that the parole board would be moving into the building; (4) negative responses were received in writing from a number of the tenants who were polled in the questionnaire and who opposed the occupancy of the office space; (5) one tenant threatened to file a lawsuit if the sublease were consented to; (6) BYU could have lost Waddell and Reed as tenants, who were renting on a 30 day, month-to-month basis; and (7) there was a possibility that other tenants would not renew their leases at the end of their terms if the sublease was consented to by BYU.

The District Court found that the Montana Board of Parole and Pardons had rented offices in the Central Plaza Building in Great Falls for several years and that no complaints had been made by other tenants in the building of misconduct on the part of persons who visited their offices; it had also occupied leased offices in the Great Falls Savings and Loan Building, with no complaints by other

- 4 -

tenants of misconduct by persons visiting their offices; and
/there were several attorneys who practiced law and represented criminal defendants who occupied space in the Strain Building at the time of the proposed sublease, three of the whom were fulltime public defenders. The court found as a fact that although BYU permitted its tenants to make the decision as to whether to allow SKB to sublease, the questionnaire used was biased in that it was not designed to evoke a favorable response. Thus no competent evidence was presented to show that the parole board was an undesirable tenant. The District Court therefore found that BYU's withholding of consent to the sublease was unreasonable.

As a preface to the issues here, BYU contends on appeal that this Court owes no deference to the finding of the District Court that BYU's withholding of consent was unreasonable. It contends that the determination of reasonableness is a question of law or at best a mixed question of facts and law and that the resolution of such is not binding upon the reviewing court, relying on Schuldes v. Wubbolding (1971), 15 Ariz.App. 527, 489 P.2d 1229; Sharp v. Hoerner Waldorf Corporation (1978), 178 Mont. 419, 584 P.2d 1298; and Sanborn v. Lewis and Clark County (1942), 113 Mont. 1, 120 P.2d 567.

Under Rule 52(a), M.R.Civ.P., this Court may not set aside the findings of fact of a trial court in a nonjury trial unless the findings are clearly erroneous. We have stated in numerous cases that we will review the evidence in the light most favorable to the prevailing party to sustain the District Court findings, that substantial credible evidence will support such findings, and that conflicts which may exist in the evidence presented at the trial are to be

resolved by the trial judge as a part of the trial judge's duty and function. Particularly we have stated that the trial court's function in nonjury cases is to find ultimate facts from conflicting evidence and its findings are sufficient if sustained by competent, substantial, although conflicting evidence. Holloway v. University of Montana (1978), 178 Mont. 198, 582 P.2d 1265.

Here we have a lease which provides that the consent of the lessor to a proposed assignment or sublease shall not be unreasonably withheld. Whether the withholding of the consent was reasonable is a determination that must be made as an ultimate fact. It is true that a statement of ultimate fact, such as the finding that BYU was unreasonable in withholding consent, might also be read as a conclusion of law. We held in Holloway that the statement does not thereby lose its character as a finding of ultimate fact because of such dual nature. 178 Mont. at 203, 582 P.2d at 1268.

In this case, the finding of the District Court that BYU's withholding of consent was unreasonable is an ultimate fact supported by evidence of record, and is not clearly erroneous. The decision of the District Court on this point must therefore be sustained by us.

A lessor has an undoubted right to control what lawful use his property may be put to, and what persons may lawfully possess the same. When a lessor agrees in the lease that he will not unreasonably withhold his consent to an assignment or sublease of the premises he thereby makes a new promise which impinges on his full right of control and which must be given some legal effect. At the least it appears to us that in a commercial lease such as this, such a provision in the lease means that the lessor, in determining whether to

- 6 -

withhold consent, will be governed by principles of fair dealing and commercial reasonableness. From that viewpoint also, we sustain the finding of the District Court that as a matter of law BYU unreasonably withheld its consent here. A factor in this determination is that BYU itself had attempted earlier to lease the same premises to the same state agency before leasing to SKB.

We adopt as a standard of reasonableness under a clause such as this conduct of a reasonably prudent person in the landlord's position exercising reasonable commercial responsibility. See Chanslor-Western Oil and Development Company v. Metropolitan Sanitary District (1970), 131 Ill.App.2d 527, 266 N.E.2d 405; American Book Company v. Yeshiva University Development Foundation, Inc. (1969), 59 Misc.2d 31, 297 N.Y.S.2d 156. Arbitrary considerations of personal taste, sensibility or convenience are not proper criteria for the landlord's consent, nor is personal satisfaction the sole determining factor. The financial responsibility of the proposed sublessee, the character of his business, its suitability for the building, the legality of the proposed use, and the nature of the occupancy are among the proper criteria.

We turn now to determine the damages, if any, allowable to the parties in this case. The core of that determination is the position taken by SKB when it notified BYU that because of the breach of the consent clause, any further of SKB's obligations under the lease agreement were terminated.

Naturally we look first to the lease agreement to see what it provides. The lease gives the lessor the right to terminate the lease after fifteen days written notice. It also requires corrective action for any breach of covenant by

- 7 -

SKB which could be corrected. No reciprocal right is provided to SKB as lessee for any breach of covenant that may be committed by BYU under the lease. SKB cannot point, therefore, to a lease provision which would give it the right to terminate its obligations to pay accruing rentals after the breach of the consent clause by BYU.

Can SKB terminate its rental payment obligation because of this breach absent a lease provision permitting the same? Although there is some caselaw to the contrary, we think properly not. When BYU breached the consent clause, SKB had several options: (1) it could sue for specific performance; (2) assign or sublet the premises to the parole board and leave the legality of the sublease to a court determination; (3) sue for a declaratory judgment; or (4) offset the landlord's claim for rent. The District Court here, in determining the damages, pursued the fourth course and we agree.

We determine in this case that the refusal by BYU to consent to the sublease was not an interference by the landlord with the leasehold estate of the lessee which would justify a cancellation of the lease by the lessee. No power to terminate the lease by the lessee is provided by the lease agreement, and even where the lessor unreasonably withholds consent contrary to a specific provision of the written lease, the consent clause has been construed to be an independent clause, not mutually dependent on other clauses in the lease. A substantial breach of the independent covenant not to withhold consent unreasonably to a sublease does not excuse the lessee from further performance of his duties under the lease. Rock County Savings and Trust Company v. Yost's, Inc. (1967), 36 Wis.2d 360, 153 N.W.2d

594. In effect the District Court here, by using the measure of damages it applied, gave effect to section 27-1-311, MCA, which provides for the measure of damages for breach of contract. The District Court determined that SKB was entitled to those amounts which would compensate it for all the detriment which was proximately caused by the breach of the consent agreement by BYU or which in the ordinary course of things would be likely to result therefrom.

Accordingly, in this case, BYU is entitled to recover from SKB the rentals which would have accrued from and after the refusal to pay by SKB on July 2, 1981, reduced by those rentals which SKB would have received from the parole board during the term of the parole board's lease if BYU had consented. Further the rentals paid by Waddell and Reed during the remainder of the primary lease term would likewise reduce the rental obligation of SKB to BYU.

However, BYU contends in this case that in addition to its accrued rentals for the remaining term of the written lease, it should also recover its damages for rentals it would have received from Waddell and Reed in suite no. 304, amounting to $5,900, incurred because of the vacancies suite no. 304 caused by the Waddell and Reed move. The District Court ruled out such recovery and we agree. The answer again is found in section 27-1-311, MCA, providing for damages for a breach of contract. Thus damages must be proximately caused under the statute whereas the damages claimed by BYU for the vacancy in the Waddell and Reed suite are remote. Moreover, they are not clearly ascertainable both in their nature and origin as a result of any breach of contract by the lessee and therefore cannot be recovered by BYU.

We have not overlooked SKB's contention that in the Restatement (2d) of Property § 15.2, page 106 (comment h), it is stated that a breach of a landlord by withholding its consent to a proposed transfer leased premises unreasonably gives a right to the other party to terminate the lease. There may in a proper case arise such a right, but as we have indicated above, it would be in a situation where a breach of the clause constituted an unjustifiable interference with the leasehold estate in the premises possessed by the lessee.

It is likewise contended by BYU in this case that our holding in Lemley v. Bozeman Community Hotel Company (Mont. 1982), 651 P.2d 979, 39 St.Rep. 1877, controls this case on whether the landlord breached the consent clause. The difference between Lemley and this case is that in Lemley, the District Court found that the landlord's refusal to permit subletting was reasonable. We stated in our opinion that substantial evidence supported that finding. 651 P.2d at 982, 39 St.Rep. at 1882. It is important for counsel in appellate cases to recognize the effect of Rule 52(a), M.R.Civ.P. In Lemley, the District Court held that the landlord's refusal to consent was reasonable. Under Rule 52(a), we may not set that finding of fact aside unless it is clearly erroneous. In the case at bar, the District Court found that the refusal to consent was unreasonable. Again, Rule 52(a) controls our examination, and if substantial evidence supports the District Court's finding so that it is not clearly erroneous, the District Court's findings of fact control our appellate review.

The final contention of BYU is that the District Court improperly calculated the damages in any event. BYU contends that the court did not give effect to the escalator clause

- 10 -

contained in the lease, and that it should have been awarded rentals for the period of time that suite no. 306 was occupied by Waddell and Reed. SKB agrees that the court did overlook the effect of the escalator clause, but denies that any rental should be considered as accruing during the period that Waddell and Reed occupied the lease premises. The parties agree, therefore, that some revision of the damages must be made, but disagree as to the effect of the occupancy of the lease premises by Waddell and Reed.

What we have said foregoing, with respect to damages controls this last dispute. BYU is entitled to the rentals accruing under the lease for the full term after the attempted termination by SKB. Whatever rentals were paid by Waddell and Reed to BYU for the period of its occupation during the primary lease term between BYU and SKB are to be treated as a mitigation of damages allowable to BYU.

The judgment of the District Court is affirmed, but the cause is remanded to the District Court for a redetermination of the damages allowable, in accordance with this opinion. Costs to SKB.

John C. Sheehy
_____
Justice

We Concur:

Frank I. Haswell
_____
Chief Justice

John Conway Harrison

H. C. Gulbrandson

Gordon Morris
_____
Justices

- 11 -